UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

BABSON COLLEGE

    Plaintiff

v.

PAUL D. REYNOLDS

    Defendant

and

JOHN AND JANE DOE(S)

    Reach and Apply
    Defendant(s)

Civil Action 04-11336 RCL

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO REMAND**

The plaintiff, Babson College ("Babson"), having moved pursuant to 28 U.S.C. § 1447(c) that the within action be remanded to Massachusetts Superior Court, hereby files the within Memorandum of Law in Support of Motion to Remand.

in the Business Litigation Section of the Suffolk Superior Court ("State Court")("State Court Action"). Babson sought *ex parte* temporary relief and compensatory damages arising out of Reynolds' breach of his employment contract, breaches of fiduciary duty, conversion of Babson's property, and tortious interference. *See* Babson's Complaint, *Ex Parte* Motion for Temporary Restraining Order and Motion for Order of Replevin, and Affidavit of Michael Fetters ("Fetters State Court Aff.").[1]

The State Court allowed Babson's *Ex Parte* Motion and entered a Temporary Restraining Order on June 4, 2004, restraining Reynolds from, *inter alia*: (i) making any assignment, transfer, or other disposition of any and all pending applications for trademarks for use of the GEM mark and logo; (ii) using or making any assignment, transfer or other conveyance of any and all personal property of and pertaining to GEM, including but not limited to application software, the marks and logo, and all operational, strategic, and financial information, and (iii) using any and all personal computers in his possession and or control that had been used to perform any work relating to GEM. In addition, Reynolds was ordered to

deliver to Babson's counsel such personal computers, including any external hard drives or other storage devices or sources (collectively, "Hardware"), so that the Hardware could be copied, reviewed, and analyzed to identify any data that is the property of Babson's. (*See* Temporary Restraining Order entered by the State Court on June 4, 2004.) The State Court set a hearing on Babson's application for preliminary injunction for June 10, 2004.

At the hearing on June 10, 2004, Reynolds appeared with counsel and filed his own Motion For Temporary Restraining Order and Motion for Replevin.[2] By the Motion, Reynolds asserts that he is the owner of the copyright in a certain computer program that is presently in the possession of Babson, which was created during the course of Reynolds' employment ("Software"). Relying on purported rights granted to him under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, Reynolds sought an order restraining and enjoining Babson from using, copying or distributing the Software in which Reynolds claims a copyright.

After hearing on June 10, 2004, the State Court entered the Preliminary Injunction in the form requested by Babson, with one

issues raised by Reynolds' motion, it suggested to Babson's counsel, and he agreed, that during that ten day period Reynolds would not be restrained from making use of the computer program. *See* Interlocutory Order on Preliminary Injunction, entered on June 10, 2004. By issuing the preliminary injunction requested by Babson, the State Court effectively denied Reynolds' Motion for Temporary Restraining Order.

Thereafter, on June 15, 2004 and ostensibly acting *pro se*,[3] Reynolds purported to remove the State Court Action to this Court pursuant to 28 U.S.C. § 1441, asserting jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. At the same time, Reynolds filed a Supplemental Motion for Temporary Restraining Order, virtually identical to the motion he filed in State Court.[4]

## II. STATEMENT OF RELEVANT FACTS

This action arises out of the several breaches by Reynolds of his employment agreement with Babson. Reynolds was initially hired by Babson to serve as a faculty member for the 1995-1996 academic year at a salary of $120,000. By that appointment, he

---

[3] Babson believes, on the basis of a comment made by Reynolds' counsel in the State Court Action (to the effect that "we have removed the action"), that

was obliged to devote himself to advancing the Kauffman-Babson Entrepreneurial Research Conference and to guest lecturing to graduate and undergraduate students. (Complaint, ¶¶7 & 8.) This appointment was extended by mutual agreement on several occasions and Reynolds' compensation increased and his duties and responsibilities changed. (*Id.* at ¶9.)

At all times, Reynolds was an employee of Babson and was subject to its internal policies, including those set forth in Babson's Faculty Handbook and its Policy on Intellectual Property. (*Id.*, ¶10; Fetters State Court Aff. at Exhibit C; Supplemental Affidavit of Michael Fetters ("Supp. Fetters Aff.") at ¶6.) Under the terms of Babson's Policy on Intellectual Property ("IP Policy"), and depending upon the levels of funding and special support that Babson provides to its faculty, the intellectual property rights to the creative works are either shared or owned outright by Babson. In the case of Reynolds, both because his appointment and job description relating to GEM was *sui generis* (it was not a regular faculty appointment) and because Babson provided more than $25,000 in special support, all rights to any work created during the course of Reynolds'

copy of Babson's Policy on Intellectual Property is attached as Exhibit A to the Supplemental Affidavit of Michael Fetters.[6]

In 1997, Babson joined with the London Business School ("LBS") to form the GEM project (Global Entrepreneurship Monitor), which was to be principally funded and controlled by and through these two academic institutions. (Complaint, ¶11.) In addition to his appointment at Babson, it was agreed that Reynolds would also be appointed as a faculty member of LBS and that LBS would share in the payment of salary and expenses incurred by Reynolds in furtherance of GEM. (*Id.*, ¶12.)

Under the leadership and direction of Babson and LBS, relationships were established to create teams around the globe to collect data, application software was modified to focus upon particular factors critical to the entrepreneurial study of all nations, and a logo and distinctive marks were created for GEM and dedicated to use. (Complaint, ¶14.) Babson and LBS provided approximately $250,000 of funding in the early stages of GEM. In 1999, they were joined by The Kaufman Foundation, an independent foundation dedicated to advancing entrepreneurship. Total annual funding provided by Babson, LBS, and The Kaufman

$500,000. (*Id.*, ¶16.) Babson and LBS considered themselves to be the owners of the intellectual property of GEM, which consisted primarily of application software, the GEM marks and logo, and the data sets. (*Id.*, ¶17.)

As one of the two lead institutions of GEM, Babson's role was to fund the project, to define and guide it by development of policy, and to organize, oversee, and communicate with the national teams who collected and provided data to GEM ("National Teams"). (*Id.*, ¶17.) In addition to his faculty appointment at Babson, Reynolds was given the title "Coordinating Principal Investigator" of GEM, and he was charged with the execution and refinement of the GEM research model, recruitment and development of the National Teams and promotion of annual results worldwide. (Complaint, ¶15.) To advance GEM and to facilitate the performance of his duties relating to GEM, Babson provided Reynolds with additional support such as a special travel allowance, a private office and computer, software, and administrative, research, and computer support beyond that normally provided to other faculty members. (Supp. Fetters Aff. at ¶5.)

research data concerning world-wide entrepreneurial activity. (Complaint, ¶¶18 & 19.) The GEM project and the goodwill related to GEM are closely associated with Babson and are critical to its reputation and brand-name. (*Id.*, ¶20.)

During the time period that he worked on GEM, Reynolds was in possession of the property and all of the confidential and proprietary information relative to GEM, including its operational, strategic, and financial information, and had access to its application software and data, and to the National Teams. (Complaint, ¶21.)

In the summer of 2002, after accepting reappointment as a faculty member of Babson, Reynolds began to exhibit unacceptable levels of autonomy in executing GEM's mission and he embarked on a program of publicly questioning the commitment of Babson and LBS to GEM. (*Id.*, ¶¶ 23-24.) When Babson reappointed him for another one-year term in 2003, Reynolds had to acknowledge in writing that he was an employee of Babson and that GEM was not his to take if he were ever to leave Babson. (*Id.*, ¶25; Fetters Aff. at Exhibit C, pp. 1-3.)

Unbeknownst to Babson, in July and August of 2003, when he

use the GEM marks and logo *in his own name*. During this same time period, Reynolds also embarked upon a concerted program to undermine the respect, stature and goodwill of Babson with the National Teams, all with the purpose and intent of moving GEM and the National Teams to another university and advancing his own interests. (Complaint, ¶¶26-27.)

On March 3, 2004, Reynolds announced to the National Teams that he would be joining the faculty of another institution and would be relocating GEM to that institution. (Complaint, ¶28.) Babson (and LBS) succeeded in persuading the university that Reynolds' attempts to move GEM were in breach of his employment contract and that it and Reynolds both ran a serious risk of violating the rights of Babson and LBS in GEM. (*Id.*, ¶29.) Nevertheless, although he resigned from Babson, Reynolds continued in his efforts to appropriate GEM to his own personal use. For example, at the hearing in State Court his attorneys announced that they had filed an application on behalf of Reynolds, *in his own name*, to register a copyright in the Software, which he developed in the furtherance of his employment and which was the exclusive property of Babson under

III. ARGUMENT

It is a fundamental rule of federal jurisdiction that a district court may accept a case under 28 U.S.C. § 1441(a) upon removal from state court *only if* the case could have originally been brought in the federal court. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant"). The district court is obliged to honor the presumption against federal jurisdiction and ensure that that the party invoking its jurisdiction has satisfied his burden of proving that federal jurisdiction does, in fact, exist. *See, e.g., Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) ("the courts of the United States are courts of limited jurisdiction, [and] there is a presumption against its existence").

    A.   There is No Federal Jurisdiction on the Face of Babson's Well-Pleaded Complaint.

For removal to be proper, "the basis for federal jurisdiction must be found on the face of the plaintiff's 'well-pleaded complaint.'" *Weiner v. Wampanoag Aquinnah Shellfish*

the case. *Weiner*, 223 F.Supp.2d at 350. This is true even where the complaint "also asserts that federal law deprives the defendant of a defense he may raise . . . or that a federal defense the defendant may raise is not sufficient to defeat the claim." *Id.* (citations omitted)(remanding case where questions of federal law were anticipated in the complaint but not put in issue directly until the defendant raised them by defense and counterclaim.) Thus, where "no federal law claim is apparent from the face of the complaint, **without regard to anticipated defenses or counterclaims** of the defendant, the case is not removable." *Financial Planning Institute, Inc. v. American Telephone and Telegraph Co.*, 788 F.Supp. 75, 76 (D. Mass. 1992) (emphasis supplied).

In the present case, the Complaint presents only state law causes of action -- breaches of contract, breaches of fiduciary duty, tortious interference, and conversion -- all of which flow from Reynolds' employment relationship with Babson. Thus, on the face of the complaint there is no basis for federal jurisdiction. Reynolds apparently believes otherwise and purports to remove this case to this Court pursuant to 28 U.S.C.

raising it either as a defense or by way of counterclaim. *Financial Planning Institute,* 788 F.Supp. at 76.

Babson's Complaint avers that in breach of his employment agreement and in breach of his fiduciary duties to Babson, Reynolds undermined Babson's respect and goodwill with the National Teams and attempted to move the GEM program to another university contrary to the interests of Babson.  In addition, Babson avers that in breach of his employment agreement, Reynolds submitted trademark applications for the GEM marks and logo, stating that they were his property to use, and he thus attempted to appropriate intellectual property owned by Babson in breach of its Policy on Intellectual Property ("IP Policy"). Further, the Complaint avers that Reynolds converted personal property of Babson, including confidential and proprietary information relating to GEM.[7]

Significantly, Babson has not alleged that Reynolds has infringed any of the exclusive rights that are protected by federal copyright law or any other federal statute.  Nor does Babson seek any of the relief afforded to authors and copyright owners under the Copyright Act.  Instead, the complaint is

causes of action, and the relief sought by Babson is the usual and typical relief sought in a state court under common law and equitable counts.

In light of all of the foregoing, there is no basis for removal jurisdiction on the face of the Complaint.

    B.   <u>The Artful Pleading Doctrine Does Not Support Removal.</u>

The defendant cannot be heard to argue that the "artful pleading doctrine" operates to except this case from the general rule. *See Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992). As stated above, Babson has asserted state law causes of action, there is no federal claim lurking in the complaint, and there was no "artful pleading" designed to deprive this Court of removal jurisdiction. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

It is perfectly clear that Babson's state law claims are not "equivalent to any of the exclusive rights within the general scope of copyright," and they are not preempted by the Copyright Act. 17 U.S.C. § 301(a). According to Reynolds, it is the rights of exclusive reproduction and distribution under 17 U.S.C. § 106 that give him the right to remove the State

*CSC Consulting, Inc.*, 152 F.Supp.2d 95, 104-05 (D. Mass. 2001); *Henry v. National Geographic Society*, 147 F.Supp.2d 16, 20-21 (D. Mass. 2001); *Yankee Candle Co. v. Bridgewater Candle Co.*, 107 F.Supp.2d 82, 86-87 (D. Mass. 2000); *Rubin v. Brooks/Cole Publishing Co.*, 836 F.Supp. 909, 922-23 (D. Mass. 1993). When determining whether the right provided by the state law claim is equivalent to the right provided by the Copyright Act, courts focus on "what the plaintiff seeks to protect" and the rights it seeks to enforce. *Rubin*, 836 F.Supp. at 923.

According to the Court of Appeals for the First Circuit, this Court must employ the "functional test" to assess the right of removal on the basis of federal preemption under the Copyright Act. If the state law claim is "'predicated upon an act incorporating elements beyond mere reproduction'" or "failure to obtain permission for use or continued use, [then it is] qualitatively different from and not equivalent to federal copyright law." *Tingley Systems, Inc.* at 105. Courts employing this test have found that a claim of breach of contract – even if the contract concerns copyrighted or copyrightable materials – is not preempted by the Copyright Act, because a party may

F.3d 1447 (7th Cir., 1996) (state law contract claim based on shrink wrap license agreement not preempted by Copyright Act)[8]; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001) (state law breach of contract claim not preempted by federal copyright law); *Lennon v. Seaman*, 63 F.Supp.2d 428, 437 (S.D.N.Y. 1999) (claim for breach of employment contract not preempted by Copyright Act.).[9]

In this case there is no preemption because a "breach of contract action . . . is not predicated upon a right that is 'equivalent to any of the exclusive rights within the general scope of copyright,'" as "a contract right may not be claimed unless there exists an element in addition to the mere acts of reproduction . . . , a promise (express or implied) upon the part of the defendant." 4 Nimmer § 16.04[C] at 16-25 (July 1994 release). *See also Selby v. New Line Cinema Corporation*, 96 F.Supp.2d 1053, 1059-61 (C.D. Cal. 2000) (discussing approaches

---

[8] In *ProCD*, the court found that the breach of contract claim was qualitatively different from copyright infringement because of the mutual assent and consideration required by a contract claim. According to the court, "[a] copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'" *Id.*, 86 F.3d at 1454.

to determining that claims for breach of contract do not protect rights equivalent to those protected by the Copyright Act.)

Likewise, state law claims for breach of fiduciary duty and conversion are not preempted because they involve interests and actions different than those proscribed by federal copyright law. *See Oddo v. Ries, MME*, 743 F.2d 630, 635 (9th Cir. 1984) (claims for conversion of property and breach of fiduciary duty not preempted by the Copyright Act.); *Data General Corp. v. Grumman Systems Support Corp.*, 795 F.Supp. 501, 505-06 (D. Mass. 1992) (conversion claim based on defendant's actions in physically taking possession of copies of software owned by the plaintiff not preempted by copyright law); *Sicari v. Raccuia*, 1994 WL 879618, *4 (Mass. Super, May 8, 1994) (conversion claim not preempted by federal copyright law).

Moreover, state law claims for unfair competition and unfair and deceptive trade practices, as well as for trade secret misappropriation, each of which require proof of an "additional element" beyond mere copying, distribution, display, or preparing of derivative works, are not preempted by the Copyright Act. *Rubin*, 836 F.Supp. at 924-925 (claim of unfair

misappropriation where alleged use of improper means was in breach of confidential relationship not preempted by copyright law); *Tingley Systems, Inc.*, 152 F.Supp. 2d at 105-107 (same).[10]

The rights Babson seeks to enforce in the State Court Action are bargained-for rights under an employment contract with Reynolds, an agreement based on mutual assent and adequate consideration. Babson also seeks to recover for Reynolds' breach of his fiduciary duties and tortious interference (when he tried to move GEM to another institution and interfere with Babson's relationships with the National Teams), which claims protect interests different than those protected by copyright law. Lastly, Babson seeks damages and relief as a result of Reynolds' unlawful possession and control of its personal property following his resignation from Babson. None of these state law claims are predicated on acts of unlawful copying or distribution, and they are not equivalent to rights under the Copyright Act. As such, Babson's state law claims are not preempted by federal copyright law.

It is also notable that Reynolds has not yet filed an answer in which he has interposed a federal copyright-based

Babson. Instead, Reynolds has simply filed a motion for temporary restraining order in which he requests that Babson be ordered to refrain from using "his" software. No matter, because it is well-established the a defendant's assertion of an issue federal law as a defense, counterclaim, or in the removal petition, does not create a federal question for removal jurisdiction. *Financial Planning Institute, Inc.*, 788 F.Supp. at 76; *see also Caterpillar Inc.*, 482 U.S. at 391. That Reynolds may defend Babson's action based on his claim to ownership of a copyright and/or trademark is, therefore, irrelevant to the question of removal jurisdiction. *Id; Wells v. Universal Pictures, Co.*, 166 F.2d 690, 691 (2nd Cir. 1948) (if rights depend on principles of common law and equity, the fact that a copyright or patent is incidentally involved does not give rise to federal jurisdiction.)

Thus, Babson's state law claims do not provide a basis for removal, and this Court does not have jurisdiction over the Complaint, which must be remanded to the State Court.

## IV. CONCLUSION

For the reasons set forth above, this action be remanded to

The motion to Remand must be ALLOWED.

BABSON COLLEGE

By its attorneys,

*/s/ Robert B. Carpenter*
Robert B. Carpenter (BBO # 075220)
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA  02210
(617) 946-4994

Dated:  June 30, 2004

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the within memo was this day served upon the defendant, *pro se*, by first class mail to his address of record.

*/s/ Robert B. Carpenter*
Robert B. Carpenter