UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE
04 JUN 30 A 11: 38

DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| BABSON COLLEGE<br><br>    Plaintiff<br><br>v.<br><br>PAUL D. REYNOLDS<br><br>    Defendant<br><br>and<br><br>JOHN AND JANE DOE(S)<br><br>    Reach and Apply<br>    Defendant(s) | Civil Action 04-11336 RCL |

**AFFIDAVIT OF MICHAEL FETTERS**

COMMONWEALTH OF MASSACHUSETTS
NORFOLK, SS.

MICHAEL FETTERS, on oath, deposes and says:

1.   I am currently the Provost of Babson College, a position I have held throughout the events that are the subject

2. This affidavit is made in support of Babson's Motion for Remand filed in the above-captioned matter. I am making this Affidavit of my own personal knowledge, or upon information and belief. Where made upon information and belief, I believe the affidavit to be true.

3. Babson appointed the defendant, Paul Reynolds ("Reynolds"), to its faculty beginning in the 1995-1996 academic term, which was extended from time to time by mutual agreement. In due course, Reynolds was appointed as "Coordinating Principal Investigator" of the "Global Entrepreneurship Monitor" ("GEM"), a joint venture formed by Babson and the London Business School ("LBS") for the study of global entrepreneurial activity.

4. As the Principal Coordinating Investigator of GEM, Reynolds was charged with executing and refining the GEM research model, coordinating research projects, recruiting and developing National Teams, and promoting the annual results world-wide. Although Reynolds was still a faculty member, as of 1998 he no longer had teaching responsibilities and his duties became entirely focused on GEM.

5. To advance GEM and to facilitate the performance of

beyond that provided to other faculty members.

6. At all times material, as a faculty member and Principal Coordinating Researcher for GEM, Reynolds was subject to Babson's internal policies and practices, including those set forth in The Babson Faculty Handbook and Babson's Policy on Intellectual Property ("IP Policy").

7. Upon appointment to Babson, all of its faculty members are verbally informed of its IP Policy regarding intellectual property created from traditional scholarship during faculty appointments. Babson's IP Policy was reduced to writing in 2001, and there have not been any material amendments to the written IP Policy since that date. Attached hereto as Exhibit A is a true and correct copy of Babson's IP Policy.

8. Under the terms of Babson's IP Policy, and depending upon the levels of funding and special support that Babson provides to its faculty, the intellectual property rights to any creative works that are developed by faculty members are either shared or owned outright by Babson.

9. In the case of Reynolds, both because his appointment and job description relating to GEM was *sui generis* (it was not

owned exclusively by Babson.

Signed under the pains and penalties of perjury this 29th day of June, 2004.

_____
Michael Fetters