IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BABSON COLLEGE,

        Plaintiff,

     v.

PAUL D. REYNOLDS,

        Defendant.

Civil Action No. 04 CV 11336 (RCL)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(7) OR
## IN THE ALTERNATIVE TO JOIN NECESSARY PARTY

Plaintiff Babson College brought this action against Professor Paul D. Reynolds and un-named "reach and apply" defendants arising out of Prof. Reynolds' work as Coordinating Principal Investigator for the "Global Entrepreneurship Monitor" ("GEM"), a research venture allegedly created, funded, and controlled jointly by Babson and the London Business School ("LBS"). Specifically, Babson's complaint alleges that Prof. Reynolds is liable for "breaches of contract, breaches of fiduciary duty, conversion, theft of intellectual property, and tortious interference." Cmplt. ¶ 1.

Pursuant to Fed. R. Civ. P. 12(b)(7), Prof. Reynolds moves to dismiss this action for failure to join LBS a party under Rule 19, or, in the alternative, to order LBS brought into the action as a necessary party. This Court should grant the relief Prof. Reynolds seeks because LBS has proclaimed itself owner or co-owner of the "property" at issue in this case, and even Babson's pleadings agree with that characterization. When "multiple parties claim ownership interests in the same property . . . all potential claimants must be joined to provide complete relief and protect the interests of absent parties." *Cross Timbers Oil Co. v. Rosel Energy, Inc.*,

167 F.R.D. 457, 460 (D. Kan. 1996). LBS has substantial interests in the disposition of the claims against Prof. Reynolds, and those interests may be inconsistent with or even adverse to Babson's. Moreover, disposition of this case in the absence of LBS would leave Prof. Reynolds at risk of multiple or inconsistent obligations.

### Background: Plaintiff's Allegations and Other Pertinent Facts[1]

In 1994, Plaintiff Babson appointed Prof. Reynolds to the position of "Paul T. Babson Professor in Entrepreneurial Studies" for the 1995-96 academic term. Cmplt. ¶ 7. The parties subsequently confirmed and extended this agreement from time to time. Cmplt. ¶ 9.

According to Babson, in 1997, Babson joined with LBS "to form a *joint venture* for the study of global entrepreneurial activity" known as the "Global Entrepreneurship Monitor" ("GEM"). Cmplt. ¶ 11 (emphasis added). Prof. Reynolds served as the "Coordinating Principal Investigator" of GEM. Cmplt. ¶ 15. Babson, LBS, and Prof. Reynolds agreed that LBS would appoint Reynolds to be a faculty member in addition to his appointment at Babson, and that Babson and LBS would share in the payment of his salary and expenses incurred in furtherance of GEM. Cmplt. ¶ 12. LBS appointed Prof. Reynolds as a Full Professor in 1999 and as Research Professor in 2003. Cmplt. ¶ 22.

Prof. Reynolds recruited and developed "National Teams" to perform data collection in countries around the globe in his role with GEM. Cmplt. ¶ 15. In addition, he created computer software to focus upon particular factors critical to entrepreneurial study of developed and

---

[1] Plaintiffs' allegations are treated as true for purposes of a motion pursuant to Rule 12(b)(7). *See Kingstone v. Liberman*, 99 F.R.D. 329, 330 (W. D. Pa. 1983). In addition, the moving party may present evidence outside the pleadings to demonstrate the interest of an absent party. *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1359 (2d ed. 1990) (collecting examples).

developing countries, and a logo and distinctive marks were created for GEM and dedicated to use. Cmplt. ¶ 14.

Babson "*and LBS* considered themselves to be the owners of the intellectual property of GEM" consisting primarily of the software, GEM marks and logo, and collected data. Cmplt. ¶ 17 (emphasis added). The GEM project has enjoyed growth, success, and international recognition that have "enhanced the stature of Babson *and LBS* in the business, academic and governmental communities." Cmplt. ¶ 18 (emphasis added).

In the summer of 2002, plaintiff alleges that Prof. Reynolds began to "exhibit greater (and unacceptable) levels of autonomy in executing GEM's mission" and that he publicly began to question the commitment of Babson and LBS to GEM. Cmplt. ¶ 24. Specifically, in the course of his work, Prof. Reynolds had access to confidential and proprietary information regarding GEM, including operational, strategic, and financial information, as well as access to GEM software and data.    Plaintiff contends that over time, Prof. Reynolds improperly began to treat this property as his own "personal" property. Affidavit of Michael Fetters (submitted in support of Babson's claims for injunctive relief) ¶¶ 17-18. Plaintiff further alleges that in 2003, Prof. Reynolds submitted trademark applications in is own name with the United States Patent and Trademark Office and the corresponding European Union entity stating his intention to use the GEM marks and logo. Cmplt. ¶ 26. Finally, plaintiff alleges that Prof. Reynolds "embarked upon a concerted program to undermine the respect, stature, and goodwill engendered by Babson *and LBS* with the National Teams" in order to move GEM and the National Teams to another institution. Cmplt. ¶ 27 (emphasis added).

On or around March 11, 2004, attorneys for LBS sent a letter to Florida International

University ("FIU") in response to Prof. Reynolds' efforts to bring FIU on board as another lead

institution in GEM. The letter stated, in relevant part:

- The original concept for GEM originated with Professor Michael Hay at LBS, who then presented the concept to Babson College . . . . Under EU law, LBS is the maker of the database . . . and LBS is entitled to prevent the unauthorised extraction or reutilisation of those data sets without its permission.
- LBS *owns copyright* in any works of which Professor Reynolds was author while that contract subsisted. . . . . LBS also claims copyright in other materials authored by its employees, including those persons associated with GEM.
- The goodwill in the names "Global Entrepreneurship Monitor" and "GEM" attaches to LBS and Babson College.
- The URL of the current GEM website, www.gemconsortium.org, is registered in the name of LBS and is the *property of LBS and Babson College.* Any steps taken . .. to point the URL to another server, or to transfer the domain name to a third party, are also actionable by LBS, whether as an infringement of LBS's trade mark rights, or under the applicable domain name dispute resolution policy, or as a misappropriation of an asset of LBS.

Exhibit A (Letter of Farrer & Co. to Florida International University) (emphasis added).

On or around March 12, 2004, LBS sent a letter to Prof. Reynolds that asserted, in

relevant part, that LBS has an "interest in GEM as a founder, lead institution, and *owner of*

*intellectual property in GEM*." Exhibit B (Letter of LBS to Prof. Reynolds) (emphasis added).

Plaintiff Babson — alone, without LBS — brought its six-count complaint against Prof.

Reynolds on or around June 3, 2004. Count I alleges that Prof. Reynolds breached his

employment contract with Babson. Count II alleges that Prof. Reynolds breached fiduciary

duties owed to Babson. Count III alleges that Prof. Reynolds unlawfully converted "personal

property owned by Babson (*and LBS*), including confidential and proprietary information

relating to GEM" (emphasis added). Count IV seeks replevin of the aforementioned personal

property held by Prof. Reynolds "against the right of Babson (*and LBS*)" (emphasis added).

Count V alleges that Prof. Reynolds has interfered with advantageous relationships between

Babson and the National Teams.  Count VI seeks relief against un-named "reach and apply"
defendants.

**Argument**

The Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) "turns on Rule
19, which implicitly distinguishes 'necessary' parties from 'indispensable' parties.  A
'necessary' party under Rule 19(a) is one that should be joined to effect a just adjudication, while
an 'indispensable' party under Rule 19(b) is simply a 'necessary' party under Rule 19(a) who,
for one reason or another, cannot be made a party and without whom the court determines the
action cannot proceed." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 184 F.
Supp. 2d 55, 77 (D. Mass. 2001) (Young, J.), *rev'd on other grounds*, 290 F.3d 42 (1st Cir.
2002).[2]  Adjudicating the motion therefore requires two steps:  First, the court must determine
whether the absent party should be joined as "necessary" under Rule 19(a).   If it decides in the
affirmative, the court then must either order the absentee brought into the action, or, if the
absentee cannot be joined, determine whether the case should be dismissed because the absentee
is "indispensable" under Rule 19(b). *See Provident Tradesmens Bank & Trust Co. v. Patterson*,
390 U.S. 102 (1968);  5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
PROCEDURE § 1359 (2d ed. 1990) (collecting cases).  As explained below, LBS is both necessary
and indispensable in this action.

---

[2] The wording of and considerations governing the cognate Massachusetts rule are essentially the
same and thus this motion may be decided without prejudice to Plaintiff's pending Motion for
Remand.  *See, e.g., Daynard* 184 F. Supp. 2d at 77 (comparing state and federal rules and citing
*Thomas v. Benson*, 264 Mass. 555 (1928), for proposition that "in [a] contract action, joint
obligees are indispensable" while "joint obligors are only conditionally necessary"); *see also*
Mass. R. Civ. P. 19 Reporter's Notes — 1973 ("With the exception of the language in Rule 19(a)
pertaining to [federal subject matter] jurisdiction, involuntary plaintiffs, and venue, it follows
federal Rule 19").

## I.    LBS IS A NECESSARY PARTY TO THIS ACTION

Babson's own allegations demonstrate the necessity of joining of LBS in this matter.  The complaint expressly describes GEM — which is the subject of the property that Prof. Reynolds allegedly converted and the object of both the fiduciary duties which he allegedly violated and the "advantageous relationships" with which he allegedly interfered — as a *joint venture* of Babson and LBS.  Babson's allegations repeatedly confirm the proprietary interest of LBS in everything associated with GEM.  Even Prof. Reynolds' employment agreement with Babson does not stand alone.  Rather, it is alleged to be but one pillar in a *broader* agreement among Babson, LBS, and Prof. Reynolds to define his job responsibilities and share his salary and expenses.

Against this backdrop, the necessity of joining LBS as a matter of both law and common sense is indisputable.  The U.S. Supreme Court has admonished that "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).  To that end, the purpose of Rule 19 is to ensure that "[w]henever feasible, the persons materially interested in the subject of an action should be joined as parties so that they may be heard and a complete disposition made."  Fed. R. Civ. P. 19 advisory committee's note to 1966 Amendment; *see also Pujol v. Shearson American Express, Inc.*, 877 F.2d 132 (1st Cir. 1989) ("These rules seek to involve as many apparently concerned persons as is compatible with efficiency and due process.") (internal quotation marks and citation omitted) .

Specifically, Rule 19(a) provides that, if jurisdictionally possible, a person *shall* be joined as a party if:

> (1) in the person's absence complete relief cannot be accorded among those already parties or
>
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
>
> > (i) as a practical matter impair or impede the person's ability to protect that interest or
> >
> > ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

All three clauses of Rule 19(a) strongly support joinder of LBS in this case.

First, the court obviously cannot accord complete and final relief if only two of the three interested parties are present. Were this case to proceed to conclusion without LBS, the prospect of subsequent litigation involving LBS would linger on the horizon, contrary to the interest of both the parties and the public in "avoiding repeated lawsuits on the same essential subject matter." Fed. R. Civ. P. 19 advisory committee's note to 1996 Amendment (explaining purpose of clause 19(a)(1)); *see also Acton Co. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982) (holding joinder of parent corporation involved in transactions necessary, *inter alia*, due to "public interest in preventing multiple and repetitive litigation [and] the interest of the present parties in obtaining complete and effective relief in a single action.").

Second, the ability of LBS to protect its interests could be impaired if it is not a party to this action. Given the arguable privity of LBS and Babson via the joint venture, LBS faces a real risk of being formally bound by the outcome of this case. *See id.* (explaining that *res judicata* attaches to those in privity with parties to action). Even if LBS were not legally bound by the outcome here, "an adverse ruling would be a persuasive precedent in a subsequent proceeding,

and would weaken [its] bargaining position for settlement purposes." *Id.* Babson cannot

contend that it will adequately represent the interests of LBS because their respective interests

are not necessarily *identical* and —to the extent each has claimed primary or exclusive

ownership of certain disputed intellectual property — may even be *adverse.* Further, LBS claims

that it, not Babson, originated the idea for the project.  LBS and Babson also are likely to have

different entitlements to and interests in the respective European and U.S. trademark

applications.  Under these circumstances, participation by both Babson and LBS is critical. *See*

*Tell v. Trustees of Dartmouth College*, 145 F.3d 417, 419 (1st Cir. 1998) (affirming dismissal

under Rule 19 and observing that "without a *perfect identity* of interests, a court must be very

cautious in concluding that a litigant will serve as a proxy for an absent party . . . [A]n obvious

potential exists for conflict.") (emphasis added).

Finally, Prof. Reynolds would face a substantial risk of incurring inconsistent obligations

if LBS is not joined in this action.  If, for example, he prevails in the litigation with Babson and

secures a judgment that he is the owner of the disputed intellectual property, he could later face a

second suit by LBS again challenging his ownership.  Alternatively, Prof. Reynolds could find

himself subject to an order requiring him to return all disputed property to Babson in this case

and an inconsistent order requiring him to return the same property to LBS in a separate action.

*See Ente Nazionale Idrocarburi v. Prudential Securities Group, Inc.*, 744 F. Supp. 450, 456

(S.D.N.Y. 1990) (explaining that continuation of case in absence of additional plaintiff would

unacceptably leave defendant subject to inconsistent obligations and "put in the quandary of

which court order . . . it should follow.")

For all of these reasons, it is well-settled that all members of a joint venture — in this

case Babson and LBS — must be joined as plaintiffs to enforce the interests of the joint venture:

- 8 -

> At common law . . . joinder of plaintiffs is compulsory where the
> parties, under the substantive law, are possessed of joint rights.
> The requirement of joinder of all those jointly interested is also the
> rule under most statutory provisions. It is the general requirement
> not only of the common law but of the modern practice statutes
> and rules of practice as well that a personal action must be joined
> in by all persons, as plaintiffs, who have a joint interest or are
> entitled jointly or in common to the right sued upon. This is true
> whether the action is one *ex contractu* or *ex delicto*, and it is
> immaterial, when several persons are shown to be jointly
> interested, in what proportions they may be concerned, or whether
> they have suffered injury or damages to the same extent.

*Harrell & Sumner Contracting Co., Inc v. Peabody Petersen Co.*, 415 F. Supp. 573, 575 (N.D.

Fla. 1976) (quoting 59 Am. Jur. 2d Parties, § 103) (dismissing action for failure to join joint

venturer as necessary and indispensable party under Rule 19), *aff'd*, 546 F.2d 1227, 1228-29 (5th

Cir. 1977) (explaining that obligations to joint venture are owed jointly to constituent partners

and that "the rule generally applied by federal courts is where two or more parties are joint

obligees, they are indispensable parties in an action for enforcement of that obligation"); *see also*

*Cross Timbers Oil Co.*, 167 F.R.D. at 460 (dismissing action for failure to join joint venturer as

necessary and indispensable party); *Ente Nazionale Idrocarburi v. Prudential Securities Group,*

*Inc.*, 744 F. Supp. at 463 (dismissing action for failing to join joint venturer).

It is likewise well-settled that every co-owner of intellectual property (whether patent,

copyright, or trademark) is a necessary party to an action concerning that property. *See* 7

CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE AND

PROCEDURE § 1614 (3d ed. 1991) (discussing *Waterman v. Mackenzie*, 138 U.S. 252 (1891), and

its progeny); *see also Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456 (Fed. Cir.

1998) (holding that patent co-owner is necessary and indispensable in infringement matter).

Here, the gravamen of Babson's claims is that Prof. Reynolds has converted property consisting

primarily of copyrighted and trademarked material that rightly belong to Babson *and* LBS. The presence of both LBS and Babson is thus necessary to adjudicate these claims.

## II.    EITHER JOINDER OF LBS OR DISMISSAL OF THIS ACTION IS REQUIRED

Once an absentee such as LBS is deemed "necessary," Rule 19(a) provides that the court "*shall* order that the person be made a party" (emphasis added). If, however, joinder of LBS proves impossible, then this action should be dismissed for failure to join an indispensable party.

Fed. R. Civ. P. 19(b) sets forth the following criteria to determine whether a party should be regarded as "indispensable":

> [1] to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;
>
> [2] the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;
>
> [3] whether a judgment rendered in the person's absence will be adequate;
>
> [4] whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

These four factors substantially overlap the considerations of "necessity" in Rule 19(a) and ultimately require the court to determine whether, in "equity and good conscience" the court should nevertheless proceed without the absent party. *See Provident Tradesmens*, 390 U.S. at 109.    As explained in the previous section, a judgment in the absence of LBS could substantially prejudice LBS and place Prof. Reynolds at risk of inconsistent obligations. Defendant is unaware of any "protective provisions" that the court could adopt in the judgment to lessen or avoid such prejudice. Any decision in this case will necessarily entail a determination of rights in which LBS has an interest and thus any judgment entered in the

- 10 -

absence of LBS will be inadequate. It is not possible at this time to assess the availability of alternative remedies to the plaintiff because it is not clear if, and for what reasons, joinder of LBS might be infeasible.

In any event, however, courts consistently have found parties with interests akin to those of LBS to be "indispensable." *See, e.g., Ente Nazionale*, 744 F. Supp. at 462-63 (holding that joint venturer is indispensable); *Harrell and Sumner Contracting*, 415 F. Supp. at 575 ("With few exceptions, federal courts have recognized the indispensability (as opposed to the mere necessity) of a joint venturer to a suit by a co-venturer."). For example, *Ente Nazionale* involved an Italian company that entered into a joint venture with an agency of the Italian government. The court held that the company was a necessary and indispensable party to the agency's action against an American securities trader for tortious interference with the joint venture because the defendant could be subjected to inconsistent adjudications in separate actions and the company's interests would be practically impaired if the court proceeded without it. *See* 74 F. Supp. at 458-63. Likewise, it is well-established that owners of intellectual property are indispensable in an action concerning those property rights. *See, e.g., Ethicon*, 135 F.3d at 1468 (explaining that patent co-owner is indispensable party in infringement action and affirming dismissal where co-owner did not consent to participate in infringement suit).

## Conclusion

For the foregoing reasons, London Business School is a necessary and indispensable

party to this action. Either joinder of LBS or dismissal of this action is required.

Respectfully submitted,

PAUL D. REYNOLDS
By his attorneys,

Michael P. Boudett, BBO No. 558757
William W. Fick, BBO No. 650562
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

DATED:  July 14, 2004

## Certificate of Service

The undersigned hereby certifies that a true copy of this motion was served by first class
mail on July 14, 2004, upon all counsel of record.

William Fick

FHBoston/1079772.1